EL APPLE I, LTD., Petitioner,

v.

Myriam OLIVAS, Respondent.

No. 10–0490.

Supreme Court of Texas.

Argued Sept. 15, 2011.

Decided June 22, 2012.

David R. Pierce, The Law Office of David Pierce, Joseph L. Hood Jr., Windle Hood Alley Norton Brittain & Jay LLP, El Paso, TX, for El Apple I, Ltd.

Francisco X. Dominguez, Dominguez & Coyle PLLC, Daniel Salvador Gonzalez, John P. Mobbs, Attorneys at Law, El Paso, TX, for Myriam Olivas.

Clara B. Burns, Kemp Smith LLP, El Paso, TX, for Amicus Curiae Texas Association of Business.

Justice MEDINA delivered the opinion of the Court.

In this appeal, we consider the calculation of an attorney's fee award in an employment discrimination and retaliation suit brought pursuant to the Texas Commission on Human Rights Act (TCHRA). The TCHRA includes a fee-shifting provision that allows a prevailing party to recover reasonable attorney's fees as part of

the costs of pursuing the claim. To calculate attorney's fees under the TCHRA, Texas courts utilize the lodestar method, that is, the number of hours worked multiplied by the prevailing hourly rates. If the lodestar does not reflect a reasonable fee, a multiplier may be applied. In this case, the court of appeals affirmed an attorney's fee award, applying a multiplier that doubled the base lodestar amount. 324 S.W.3d 181 (Tex.App.-El Paso 2010).

The employer presents two issues. First, it claims that the affidavits used to support the fee application were not legally sufficient to support the trial court's determination of the hours expended or a reasonable hourly rate. Second, the employer argues that the trial court abused its discretion by enhancing the lodestar with a 2.0 multiplier. Because we agree that the evidence in the trial court was insufficient to make a lodestar calculation, we reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

I

Myriam Olivas, an Applebee's restaurant manager in El Paso, filed suit against her employer, El Apple I, Ltd., alleging sex discrimination and retaliation under the TCHRA. TEX. LAB. CODE §§ 21.001–.55. A jury determined that Olivas was not the target of sex discrimination, but that her decision to file discrimination complaints against her employer was a motivating factor in El Apple's creation of a hostile work environment. Thus, Olivas prevailed on only the retaliation claim. The trial court rendered judgment awarding Olivas compensatory damages of $1,700 for back pay, $75,000 for past compensatory damages, and $28,000 for future compensatory losses.

As the prevailing party, Olivas also submitted an application for attorney's fees.

In affidavits, her attorneys estimated that they collectively spent 850 hours on the case. Olivas's lead counsel, Daniel Gonzalez, averred that he spent approximately 700 hours on the case. Her other attorney, Francisco Dominguez, averred that he spent 150 hours in preparing and trying the case. At a hearing on the fee application, Dominguez subsequently testified that he spent 190 hours, but that he was not seeking compensation for some of that time because it was duplicative of work performed by his co-counsel.

Gonzalez testified that both attorneys' time was reasonable and necessary given the nature of the case and the results obtained. Counsel attributed the number of hours on the case to the number of discovery instruments and pleadings, the number of depositions and witness interviews, as well as the quality of representation. Both Dominguez and Gonzalez testified that they refrained from taking additional clients because of the case.

Following the fee-application hearing, the trial court used the lodestar method to calculate attorney's fees. The court determined that Gonzalez should be compensated at a rate of $250 per hour for 700 hours for a total of $175,000, and that his co-counsel Dominguez should be compensated at a rate of $300 per hour for 190 hours for a total of $57,000. The court then enhanced the lodestar by applying a 2.0 multiplier, resulting in $464,000 in attorney's fees for the trial of the case. Legal assistant fees for 100 hours were also added to the award at a rate of $65 per hour for a total of $6,500. The court further awarded $99,000 in conditional attorney's fees for defending post-judgment motions and appeals.

On appeal, El Apple argued that the attorney's fees awarded through trial was an abuse of discretion because the court did not have sufficient evidence on which

to make a reasonable assessment. The company also complained that no basis existed for the trial court's enhancement of the lodestar. The court of appeals vacated the award of Olivas's back-pay damages but otherwise affirmed Olivas's compensatory damages and attorney's fees. 324 S.W.3d at 195. The court held that the affidavits were legally sufficient to support the trial court's determination of hours spent and a reasonable hourly rate, and that more detailed billing records were unnecessary. *Id.* at 193. The court also determined that the trial court had not erred in enhancing the lodestar because it considered separate factors from those it used to determine the lodestar. *Id.* at 193–94.

## II

The remedies provided under the TCHRA mirror those available under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. *Compare* Tex. Lab.Code §§ 21.258, 21.2585, 21.259(a) *with* 42 U.S.C. §§ 1981a, 2000e–5(g), 2000e–5(k). One of the TCHRA's purposes is to harmonize state and federal employment discrimination law. Tex. Lab.Code § 21.001(1). Although state procedural rules govern the determination of attorney's fees in a suit brought under state law, Texas courts have looked to federal law in applying our own statute, including section 21.259(a) of the TCHRA, which provides for an award of attorney's fees to the prevailing party as part of the costs. *See, e.g., Sw. Bell Mobile Sys., Inc. v. Franco,* 971 S.W.2d 52, 55–56 (Tex. 1998); *Burgmann Seals Am., Inc. v. Cadenhead,* 135 S.W.3d 854, 860–61 (Tex. App.-Houston [1st Dist.] 2004, pet. denied); *Elgaghil v. Tarrant Cnty. Junior Coll.,* 45 S.W.3d 133, 144–45 (Tex.App.-Fort Worth 2000, pet. denied). Because federal courts use the lodestar method in awarding attorney's fees in Title VII cases, Texas courts

have likewise used lodestar in awarding fees under Section 21.259(a) of the TCHRA. *See, e.g., Dillard Dep't Stores, Inc. v. Gonzales,* 72 S.W.3d 398, 412 (Tex. App.-El Paso 2002, pet. denied); *W. Telemarketing Corp. Outbound v. McClure,* 225 S.W.3d 658, 675–76 (Tex.App.-El Paso 2006, pet. granted, judgm't vacated w.r.m.).

The lodestar method of calculating attorney's fees first "achieved dominance" in federal class actions. *Gisbrecht v. Barnhart,* 535 U.S. 789, 801, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002). Texas courts similarly adopted lodestar initially for fee setting in class actions, and the Texas Legislature subsequently mandated the method's use in such cases. *See* Tex. Civ. Prac. & Rem. Code § 26.003(a) (providing that "the trial court shall use the Lodestar method to calculate the amount of attorney's fees to be awarded class counsel").

Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. *Gonzales,* 72 S.W.3d at 412. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. *La. Power & Light Co. v. Kellstrom,* 50 F.3d 319, 323–24 (5th Cir.1995). The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Gonzales,* 72 S.W.3d at 412.

Our class action rule identifies the relevant factors when making a lodestar determination by reference to Rule 1.04(b), Texas Disciplinary Rules of Professional Conduct. *See* Tex.R. Civ. P. 42(i)(1) (providing for attorney's fees award in class

actions). The disciplinary rule enumerates the following non-exclusive list of factors:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(b); *see also Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (quoting the eight-factor test for determining attorney's fees).[1] Our class action rule further provides that any adjustment to the base lodestar "must be in the range of 25% to 400% of the lodestar figure." TEX.R. CIV. P. 42(i)(1).

### III

■ The award of attorney's fees generally rests in the sound discretion of the trial court. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam). But a party applying

for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). El Apple submits that a court cannot calculate the base fee or lodestar without such information and that the trial court here abused its discretion by not requiring the plaintiff to provide these details. El Apple further submits that the prevailing party's documentation should preferably be in the form of contemporaneous time sheets, which evidence the performance of specific tasks, such that the trial court can make a reasoned determination of how much time was reasonably spent pursuing the litigation.

Olivas responds that Texas law has not required detailed billing records or other documentation as a predicate to an attorney's fees award. *See, e.g., Tex. Commerce Bank, Nat'l Ass'n v. New*, 3 S.W.3d 515, 517–18 (Tex.1999) (per curiam) (recognizing attorney's affidavit to be sufficient support for award of fees in default judgment); *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892–93 (Tex.App.-Austin 2010, pet. denied) (accepting affidavit testimony detailing legal work and rates); *In re A.B.P.*, 291 S.W.3d 91, 99 (Tex.App.-Dallas 2009, no pet.) (noting that documentary evidence is not a prerequisite to an award of attorney's fees); *Schlager v. Clements*, 939 S.W.2d 183, 191–93 (Tex.App.-Houston [14th Dist.] 1996, writ denied) (holding that the failure to produce documentary evidence would affect the weight of an attorney's testimony regarding fees rather than its admissibility). Olivas submits that our recent decision in *Garcia v. Gomez* is con-

---

1. *Arthur Andersen*'s eight-factor test is similar to the test used by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), overruled on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

sistent with this line of authority. 319 S.W.3d 638 (Tex.2010).

*Garcia*, however, is not on point. It involved a statute that required a trial court to dismiss a health-care liability claim and award attorney's fees to the defendant health-care provider, on motion, if the claimant did not timely serve an expert report. The claimant did not provide the report, and the trial court dismissed the claim. The court, however, did not award attorney's fees as the statute required. The health-care provider appealed, but the court of appeals affirmed the judgment, concluding that there was no evidence of the reasonable attorney's fees incurred by the health-care provider. *Id.* at 641.

Although the provider's attorney testified in the trial court about attorney's fees, appeared on his client's behalf, and filed pleadings in the case, the court of appeals concluded no evidence showed that the health-care provider had actually incurred attorney's fees. *Id.* We disagreed. We concluded that the statute mandated the award of attorney's fees, on motion, and that the attorney's uncontested, albeit cursory, testimony about his fee, along with the other circumstances, was enough to present the issue to the court. *Id.*

The present case, of course, involves a different statute and a different issue. Unlike *Garcia*, the question is not whether the trial court erred in failing to make an award of fees required by statute, but rather whether the court properly applied the lodestar method in determining contested attorney's fees. As El Apple points out, this Court has not previously reviewed a lodestar award under these circumstances.

The lodestar method aims to provide a relatively objective measure of attorney's fees. *Gonzales*, 72 S.W.3d at 412. It has been criticized, however, for providing a financial incentive for counsel to expend excessive time in unjustified work and for creating a disincentive to early settlement. *Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 960 (Tex.1996) (citing *Court Awarded Attorney Fees*, 108 F.R.D. 237, 246–49 (3d Cir. Task Force 1985)). To avoid these pitfalls, a trial court should obtain sufficient information to make a meaningful evaluation of the application for attorney's fees. Charges for duplicative, excessive, or inadequately documented work should be excluded. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir.1993). A meaningful review of the hours claimed is particularly important because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party. As the U.S. Supreme Court has observed:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C.Cir.1980) (en banc)). While Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, the requirement has merit in contested cases under the lodestar approach.

The starting point for determining a lodestar fee award is the number of hours "reasonably expended on the litigation." *Id.* at 433, 103 S.Ct. 1933. The party applying for the award bears the burden of

proof. *Id.* at 437, 103 S.Ct. 1933. That proof should include the basic facts underlying the lodestar, which are: (1) the nature of the work, (2) who performed the services and their rate, (3) approximately when the services were performed, and (4) the number of hours worked. An attorney could, of course, testify to these details, but in all but the simplest cases, the attorney would probably have to refer to some type of record or documentation to provide this information. Thus, when there is an expectation that the lodestar method will be used to calculate fees, attorneys should document their time much as they would for their own clients, that is, contemporaneous billing records or other documentation recorded reasonably close to the time when the work is performed.

■ In this case, neither attorney indicated how the 890 hours they spent in the aggregate were devoted to any particular task or category of tasks. Neither attorney presented time records or other documentary evidence. Nor did they testify based on their recollection of such records. The attorneys instead based their time estimates on generalities such as the amount of discovery in the case, the number of pleadings filed, the number of witnesses questioned, and the length of the trial. While all this is relevant, it provides none of the specificity needed for the trial court to make a meaningful lodestar determination. The court could not discern from the evidence how many hours each of the tasks required and whether that time was reasonable. Without at least some indication of the time spent on various parts of the case, a court has little basis upon which to conduct a meaningful review of the fee award.

Moreover, if multiple attorneys or other legal professionals are involved in a case, the fee application should indicate which attorney performed a particular task or category of tasks. The application here did not provide this information. For instance, the fee application details a list of thirty-seven pleadings and states that they were prepared or reviewed by either Gonzalez or Dominguez. The two attorneys, however, bill at different rates. Without specifying who performed a task, the information is incomplete. Such uncertainty diminishes the objectivity that the lodestar method aims to provide.

Olivas's attorneys also utilized legal assistants in this litigation and were awarded $6,500 for their services ($65 per hour for 100 hours of work). While both attorneys stated in their affidavits that "[l]egal assistant time was necessarily expended in the prosecution of [the] case," no evidence was offered to describe the tasks their legal assistants performed, who performed these services, or their qualifications. When obtaining payment for work done by paralegals or legal assistants, Texas courts have required more information, such as:

(1) [T]he qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant.

*All Seasons Window and Door Mfg., Inc. v. Red Dot Corp.,* 181 S.W.3d 490, 504 (Tex.App.-Texarkana 2005, no pet.) (quoting *Multi–Moto Corp. v. ITT Commercial Fin. Corp.,* 806 S.W.2d 560, 570 (Tex.App.-Dallas 1990, writ denied)). Paralegal fees have been denied absent such proof. *Moody v. EMC Servs., Inc.,* 828 S.W.2d 237, 248 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

■ We generally accord considerable deference to a trial court's findings regarding whether prevailing counsel's claimed

hours are excessive, redundant, or unreasonable. The trial court possesses a superior understanding of the case and the factual matters involved. But when applying for a fee under the lodestar method, the applicant must provide sufficient details of the work performed before the court can make a meaningful review of the fee request. For the purposes of lodestar calculations, this evidence includes, at a minimum, documentation of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required.

Because the affidavits and other evidence in this case did not provide sufficient information for a lodestar calculation, we must reverse and remand. We are mindful, however, that the attorneys in this case may not have contemporaneous billing records that document their time as we have not heretofore explained the proof necessary to support a fee application under the lodestar method. Nevertheless, on remand, they should reconstruct their work in the case to provide the minimum information the trial court requires to perform a meaningful review of their fee application.

## IV

El Apple further complains that the trial court erred in doubling the lodestar to approximate a reasonable attorney's fee in the case. As previously noted, our class action rule expressly recognizes the multiplier, authorizing the trial court to make attorney fees awards "in the range of 25% to 400% of the lodestar figure." Tex.R. Civ. P. 42(i)(1). Although that rule does not apply here, the lodestar method should not vary from claim to claim, that is, the formula should be the same in TCHRA suits as in class actions. When appropriate under the particular circumstances of the case, a trial court may therefore use a multiplier to increase or decrease the lodestar figure to approximate a reasonable fee.

El Apple argues, however, that the trial court abused its discretion in using a 2.0 multiplier in this case because no circumstances justify inflating the base figure. El Apple contends instead that a multiplier should have been used in this case to discount the lodestar because Olivas prevailed only on her retaliation claim, while her fee request presumably included the time spent on the discrimination claim as well. Thus, El Apple submits the time Olivas's attorneys spent preparing and trying the discrimination claim should be discounted or excluded from the lodestar figure unless she can show that the time spent pursuing the unsuccessful claim advanced her successful claim.

El Apple further asserts that the lodestar is presumptively a reasonable fee and that enhancements should be rare and reserved for exceptional cases. *Perdue v. Kenny A. ex rel. Winn,* —— U.S. ——, 130 S.Ct. 1662, 1673, 176 L.Ed.2d 494 (2010). El Apple contends that the trial court based its decision to enhance the lodestar solely on the contingent nature of the fee and not on any exceptional aspect of the case. Moreover, El Apple submits that federal law has expressly rejected the contingent nature of an attorney's representation as a basis for the lodestar's enhancement. *City of Burlington v. Dague,* 505 U.S. 557, 567, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

State procedural rules generally govern the determination of attorney's fees in a suit brought under a state statute permitting attorney's fees. Although the TCHRA was enacted to effectuate the policies of Title VII of the Civil Rights Act of 1964, no indication exists that the Legislature intended to incorporate federal proce-

dure for assessing attorney's fees. *See* Tex. Lab.Code § 21.001; *Hoffmann–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445–46 (Tex.2004). Nevertheless, in applying our state statute, we may draw on the far greater body of federal court experience with lodestar and fee shifting under the similar federal statute. Though not bound to adopt the federal standards, Texas courts may appropriately consider them. *Cf. Williams v. Lara*, 52 S.W.3d 171, 181 (Tex.2001); *Bloyed*, 916 S.W.2d at 954 n. 1.

We accordingly accept the premise that lodestar presumptively produces a reasonable fee, but that exceptional circumstances may justify enhancements to the base lodestar. Whether a multiplier is needed, however, cannot be determined until the base lodestar is known. Because we do not as yet have a legitimate base lodestar in this case, any comment on the need for a multiplier here is premature.

\*   \*   \*   \*   \*   \*

In summary, we hold that the fee application and proof in this case did not provide the trial court legally sufficient evidence to calculate a reasonable fee award using the lodestar method. To establish the number of hours reasonably spent on the case, the fee application and record must include proof documenting the performance of specific tasks, the time required for those tasks, the person who performed the work, and his or her specific rate. Because the record in this case does not provide these details, we reverse the court of appeals' judgment affirming the attorney's fee award and remand to the trial court for a redetermination of fees consistent with this opinion.

Justice HECHT filed a concurring opinion in which Justice WAINWRIGHT and Justice WILLETT joined.

Justice HECHT, joined by Justice WAINWRIGHT and Justice WILLETT, concurring.

I join fully in the Court's opinion with the additional observation that, besides lacking supporting records, Olivas's attorneys' request for fees and the trial court's award were patently unreasonable.

After an eight-day trial, the jury failed to find that El Apple discriminated against Olivas on the basis of gender but found that it created a hostile work environment for her because of her complaints of discrimination. The jury awarded Olivas $1,700 in back pay and $103,000 for past and future compensatory damages. The trial court awarded Olivas $464,000 attorney fees and $6,500 paralegal fees through the rendition of judgment, plus $99,000 conditionally for post-judgment proceedings and appeals. The court of appeals reversed the back-pay award and affirmed the other damages and attorney fees.[1] The court of appeals held that the award of attorney fees was reasonable. On its face, it could not have been.

Olivas's lead counsel, Daniel Gonzalez, engaged another lawyer, Francisco X. Dominguez, to help him try the case. Dominguez stated that he spent 150 hours total, but later raised the number to 190. Gonzalez stated that he spent 700 hours total and about 200 at trial, meaning that Gonzalez spent 500 hours for pretrial proceedings. Discovery was minimal. The parties exchanged requests for disclosure and a set of interrogatories. Olivas sent El Apple a request for admissions and two requests for production. Gonzalez estimated that 1,200–2,500 pages of documents were produced. Three depositions were taken. One motion to compel was heard and granted.

---

1. 324 S.W.3d 181 (Tex.App.-El Paso 2010).

I agree with the Court that Gonzalez and Dominguez's failure to produce any records supporting the hours they claimed to have spent on the case is fatal to their fee application. Even if they had, their request would not be reasonable. Even if the time they claimed to have spent for trial were considered reasonable, and it is not at all clear that it should be, 500 hours on the pretrial proceedings could not possibly be reasonable.

There are two other, surer indicators of a reasonable fee. One is that El Apple's lawyer, David Pierce, and his associate spent 266.7 hours at about $200 per hour. The trial court ordered El Apple to pay Olivas more than 7 times as much as it paid its own lawyers, for 890 hours of attorney time at an average of $521 per hour. The other is what contingent fee might be reasonable had this been, say, a products liability case. A 50% contingent fee, taking into account the difficulty of the case and the reality that many cases are lost, would have been $51,500. Instead, the trial court awarded Olivas's attorneys 450% of her recovery.

El Apple's counsel repeatedly stated to the trial court that Olivas's attorneys had represented her well and should be fully compensated, objecting only to their exorbitant request. Statutory fee-shifting is not a bonanza. It should take into account what the market should. Olivas's attorneys' request did not do so.