In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00265-CV

_____

**MINDA LAO TOLEDO, Appellant**

**V.**

**KBMT OPERATING COMPANY, LLC, KBMT LICENSE COMPANY, LLC, BRIAN BURNS, JACKIE SIMIEN AND TRACY KENNICK, Appellees**

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A130025-C**

**OPINION**

In a remand following an appeal,[1] the trial court awarded KBMT Operating Company, LLC, KBMT License Company, LLC, Brian Burns, Jackie Simien and Tracy Kennick (collectively, "KBMT") the sum of $256,689[2] in attorney's fees and

_____

[1] *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 717 (Tex. 2016).

[2] For simplicity, we have rounded all monetary figures to whole numbers.

1

$1,468 in costs of court against Minda Lao Toledo. The trial court awarded the attorney's fees, the subject of Toledo's appeal, based on a provision in the Texas Citizens Participation Act (TCPA) allowing a party defending litigation to recover "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action [subject to the Act] as justice and equity may require[.]"[3] In a single issue, Toledo argues there is insufficient evidence in the record to support the trial court's award because KBMT's attorneys filed only "[o]ne short, form motion, two strikingly similar briefs and three court appearances result[ing] in invoices in excess of $300,000" in the proceedings that resulted in the award. In a cross-appeal, KBMT argues the trial court erred by declining its request for an award of attorney's fees for Toledo's possible appeals conditioned on an outcome in its favor.

Given the Texas Supreme Court's recent clarification in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*[4] of the standards that apply to a court's evaluation of a request for an award of attorney's fees together with our conclusion that the evidence is factually insufficient to support the $256,689 awarded in fees, we reverse the judgment and remand the case to the trial court for another trial to determine an

_____

[3] Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1) (West 2015).

[4] No. 16-0006, 2019 WL 1873428, at *11-23 (Tex. Apr. 26, 2019).

appropriate award to KBMT on its claim for fees.[5] Since more proceedings are required, we conclude we need not reach the arguments associated with KBMT's cross-appeal.[6]

## Background

In 2012, KBMT and several of its employees, reported in television newscasts that the Texas Medical Board had punished Toledo after the "Board found she engaged in sexual contact with a patient and became financially involved with a patient in an inappropriate manner." Toledo sued KBMT for defamation based on the missing content of the reports. KBMT filed a timely motion to dismiss Toledo's claims under the TCPA.[7] The trial court denied the motion and KBMT appealed. Ultimately, after losing the appeal in this Court, KBMT prevailed on its appeal in the Texas Supreme Court. The Supreme Court held that the TCPA required Toledo's

---

[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1).

[6] Tex. R. App. P. 47.1 (requiring opinions to address each issue that is necessary to resolving the appeal).

[7] A more detailed history of Toledo's suit is in *KBMT*, 492 S.W.3d at 711-13. Providing a fully detailed description in this appeal is unnecessary to our resolution of the appeal.

action to be dismissed.[8] It remanded the case for a trial on KBMT's claims for attorney's fees, punitive damages and costs of court.[9]

On remand, KBMT's lead attorney, Michael McCabe, filed a "Motion for Award of Attorneys' Fees, Court Costs, and Sanctions." In his motion, McCabe asked that the trial court award KBMT $256,689 in attorney's fees and $1,468 in costs of court. The motion is supported by two affidavits. One is a business records affidavit, which authenticates 177 pages of bills and supporting documents that McCabe's law firm sent to the London Broadcasting Company for the work it performed in Toledo's case. The other is an affidavit signed by McCabe, which describes his professional experience, his role as lead counsel in the case, and identifies the other attorneys who participated in defending KBMT from Toledo's claim together with each attorney's and paralegal's hourly rates. McCabe's affidavit describes the course of the litigation. He summarized the firm's invoices by date and the total attorney's fees billed by date of invoice. In his affidavit, McCabe states the fees charged to KBMT are the usual and customary fees for the work the attorneys completed. He also stated the fees were reasonable and necessary for the case.

---

[8]  *Id*. at 717.

[9] *Id*.

Before the trial, Toledo filed objections to KBMT's evidence supporting its request for fees. Toledo objected on many grounds, which included the attorneys charging KBMT for (1) the attorneys' travel time at their full rates, (2) communicating with KBMT's insurer, (3) conducting research on rules and procedures, (4) researching a motion for rehearing that KBMT never filed, (5) filing motions seeking extensions of time, (6) having local counsel perform unnecessary work, (7) billing for clerical work done by a paralegal at the paralegal's hourly rate, (8) failing to adequately document tasks performed, redacting records, and describing tasks using descriptions that are vague, (9) duplicating efforts by having several attorneys perform the same tasks, (10) spending unreasonable amounts of time to draft and edit documents and to prepare for oral argument, and (11) charging KBMT for the time required to redact language from the invoices McCabe's firm sent to KBMT. Toledo also objected to McCabe's affidavit on the basis that it failed to establish what rates were reasonable for attorneys practicing in Orange and Jefferson Counties.

In addition to filing written objections, and to support her objections claiming KBMT was seeking an excessive award, Toledo filed an affidavit signed by Joe House. House represented Toledo in the trial court and on appeal. KBMT subsequently moved to strike House's affidavit, claiming House's affidavit was

conclusory and he lacked personal knowledge of the billing practices employed by McCabe's firm or the work the firm did to represent KBMT.

In early-April 2017, the trial court conducted a trial on KBMT's request for fees. McCabe is the only witness who testified during the trial. During the trial, the trial court overruled Toledo's objections to KBMT's evidence and admitted McCabe's affidavit. The trial court also admitted an exhibit showing the court costs that KBMT incurred in its appeal to the Texas Supreme Court and a business records affidavit, which authenticated the invoices that McCabe's firm sent to KBMT. After the trial, McCabe filed a supplemental affidavit. In his supplemental affidavit, McCabe stated that $50,000 in additional attorney's fees would be reasonable in addition to the amount KBMT requested at trial, with $25,000 of the additional amount due if KMBT prevailed in the intermediate appellate court and $25,000 more if it prevailed in the Texas Supreme Court. Two weeks after the trial court conducted a bench trial on KBMT's claims, the court granted KBMT's request asking to strike Joe House's affidavit.[10] On the same day, the trial court signed an order awarding KBMT $256,689 in attorney's fees. The award, however, does not include any recovery for additional fees contingent on Toledo's appeals.

---

[10] We express no opinion over the correctness of this ruling, as it is unchallenged in this appeal.

Reasonable Attorney's Fees

"[T]o secure an award of attorney's fees from an opponent, the prevailing party must prove that: (1) recovery of attorney's fees is legally authorized, and (2) the requested attorney's fees are reasonable and necessary for the legal representation, so that such an award will compensate the prevailing party generally for its losses resulting from the litigation process."[11] The TCPA authorizes trial courts to award reasonable attorney's fees to a defendant who prevails on a motion to dismiss.[12] The Texas Supreme Court has explained that "[a] reasonable [attorney's] fee is one that is not excessive or extreme, but rather moderate or fair."[13] The mere fact that a party and a lawyer contracted for or incurred a particular amount of attorney's fees does not conclusively prove that a fee paid by the lawyer's client is reasonable.[14] When a party seeks to shift fees from its client to the opposing party, the party seeking fees must prove that the amount of the fees it is requesting is

---

[11] *Rohrmoos*, 2019 WL 1873428, at *11.

[12] *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016).

[13] *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010).

[14] *Rohrmoos*, 2019 WL 1873428, at *11.

reasonable.[15] That said, when awarding attorney's fees, the factfinder should exclude "[c]harges for duplicative, excessive, or inadequately documented work[.]"[16]

During the hearing, KBMT agreed that it was asking the trial court to apply the lodestar analysis to determine the amount it should recover on its claim for attorney's fees. In the first instance, calculating an attorney's fee award using the lodestar method required the trial court to determine "the reasonable hours worked multiplied by a reasonable hourly rate[.]"[17] KBMT had the burden of proof on both these elements of its claim.[18] To meet that burden, KBMT needed to introduce evidence addressing the "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services."[19] We also note the attorney's fees that trial courts ultimately decide to assess do not depend solely on the terms found in the contracts that exist between parties and their lawyers.[20] When the record includes

---

[15] Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1).

[16] *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012).

[17] *Rohrmoos*, 2019 WL 1873428, at *20.

[18] *See id*. at *20.

[19] *Id*. at *22.

8

evidence that is adequate to address the five factors outlined above, trial courts may presume the multiplication step of the analysis has produced a figure that reflects a presumptively reasonable fee.[21]

After completing the multiplication step of the analysis, the factfinder must then determine whether evidence of other considerations overcomes the presumption of reasonableness and requires adjustment to determine a reasonable fee.[22] The nonexclusive factors that the factfinder may consider, which are identified by the Texas Supreme Court in *Arthur Andersen & Co. v. Perry Equipment Corporation*,[23] include (1) "the time and labor required," (2) "the novelty and difficulty of the questions involved," (3) "the skill required to perform the legal service properly," (4) "the fee customarily charged in the locality for similar legal services," (5) "the amount involved," (6) "the experience, reputation, and ability of the lawyer or lawyers performing the services," (7) "whether the fee is fixed or contingent on results obtained," (8) "the uncertainty of collection before the legal services have

---

[20] *Id.* at *21.

[21] *Id.*

[22] *Id.* at *22.

[23] 945 S.W.2d 812, 818 (Tex. 1997).

been rendered," and (9) "[the] results obtained."[24] Generally, we "accord considerable deference to a trial court's findings regarding whether prevailing counsel's claimed hours are excessive, redundant, or unreasonable."[25] While considerations in the two steps overlap, the trial court must avoid duplicating the adjustments called for in the steps.

We review a trial court's award of attorney's fees using an abuse-of-discretion standard.[26] In applying that standard, an appellate court must determine whether the trial court acted arbitrarily without reference to any guiding principles.[27] In conducting our review, we agree with the Fort Worth Court's statement that "[i]n the proper exercise of its discretion, a trial judge is obliged to do more than simply act as a rubber-stamp, accepting carte blanche the amount appearing on the bill."[28] Here, KBMT's evidence includes the billing records that the attorneys who

---

[24] *Rohrmoos*, at * 21 (quoting *Arthur Andersen & Co.*, 945 S.W.2d at 818).

[25] *El Apple I*, 370 S.W.3d at 763-64.

[26] *Sullivan*, 488 S.W.3d at 299.

[27] *McGibney v. Rauhauser*, 549 S.W.3d 816, 820 (Tex. App.—Fort Worth 2018, pet. denied).

[28] *Id.* at 821.

represented KBMT created around the time they performed the services at issue.[29] While McCabe's firm redacted the invoices that are in evidence to delete the lawyer-client privileged information from them,[30] the invoices and McCabe's testimony about them are the evidentiary basis on which the trial court determined the award.

After taking the matter under advisement, the trial court awarded the full amount KBMT requested.[31] While an abuse of discretion does not occur if the trial court based its award on conflicting evidence, an appellate court will nevertheless find that an abuse of discretion occurred if the evidence that is in the record fails to support the trial court's award.[32] We note that when the trial court ruled on KBMT's request, it did not have the benefit of the Supreme Court's recent opinion in *Rohrmoos*.[33] In *Rohrmoos*, the Supreme Court clarified how the lodestar method and

---

[29] *Rohrmoos*, 2019 WL 1873428, at *23 (noting the value of invoices when they are in evidence).

[30] *See* Tex. R. Evid. 503.

[31] *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1) (requiring trial courts, when granting motions to dismiss TCPA claims, to award the moving party "reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require").

[32] *McGibney*, 549 S.W.3d at 821.

[33] *See Rohrmoos*, 2019 WL 1873428, at *22.

11

*Arthur Andersen* factors are to be applied by the lower courts when evaluating a party's request to be awarded attorney's fees.

In her appeal, Toledo complains that KBMT failed to meet its burden to prove the amount the trial court awarded KBMT was reasonable. She contends the award is excessive for eleven reasons: (1) the invoices reflect substantial duplication of effort by the attorneys in McCabe's firm; (2) the firm over-researched legal issues by using many attorneys to perform essentially the same research; (3) in large part, the firm billed for the time it would have taken to do the original research and writing even though it recycled the same arguments and authorities it used in the motions and briefs it filed with the trial court and the briefs it filed in each stage of KBMT's appeals; (4) the firm billed paralegal and attorney rates for tasks the firm should have classified as clerical or ministerial work; (5) many tasks that are described in the firm's invoices use vague terms, which do not adequately describe the tasks performed; (6) the firm billed for work that the court should have eliminated as non-reimbursable; (7) the firm charged KBMT for work based on invoices from local counsel whose work duplicated the same tasks performed by McCabe's firm; (8) KBMT's attorneys charged time for attorneys who prepared for oral argument but then did not participate in presenting KBMT's arguments to the courts; (9) the firm charged KBMT for time spent communicating with its insurance carrier and adjuster,

12

for researching court procedures and rules, for obtaining extensions of time when these tasks were unrelated to KBMT's motion to dismiss; (10) the firm presented a bill that shows a lack of billing judgment, given the amount of the requested award; and (11) the firm charged rates higher than those prevailing in the legal market where Toledo sued. Toledo raised each of these arguments at trial.

We agree with Toledo's argument that the trial court awarded KBMT an excessive fee. Here, the record shows that the trial court accepted McCabe's rather conclusory testimony asserting the hours worked were reasonable based on his evaluation of his firm's bills using the relevant factors courts must use to establish a reasonable fee.[34] We disagree with KBMT that McCabe's conclusory testimony and the invoices sent by McCabe's firm to KBMT established that the amount it recovered is reasonable. For instance, the invoices that are in evidence show many attorneys working on the case, each billing many hours to prepare for what appear from the descriptions to constitute work on the same documents and briefs. Yet when McCabe testified, he failed to offer an adequate explanation about why the layers of work reflected by the different lawyers working on the case were reasonable given the limited scope of the issue central to each stage of the dispute, whether KBMT's broadcast was substantially true. Stated another way, McCabe failed to address in

---

[34] *Id.* at *21.

13

the trial or in his affidavit why the attorneys who billed KBMT for working on the case were not needlessly duplicating and revising each other's work.

The evidence before the trial court also failed to establish the amount at stake in the dispute. The evidence that is in the record shows that KBMT considered the case to be serious. That evidence, without more, does not inform a court about an important factor needed under the circumstances of Toledo's case to reach an informed decision on the award KBMT requested in the trial. Without knowing what amount of money was at stake, a trial court may mistakenly award fees that are disproportionate to the amount at stake.

As Toledo noted in her supplemental brief, the efforts of KBMT's attorneys revolved around a motion to dismiss and two appeals. There was no trial. The invoices do not show that much discovery occurred. The record does not show whether Toledo was suing KBMT for ten thousand dollars or one million dollars. Generally, the amount at stake plays a significant role in a factfinder's determination about whether attorney's fees are reasonable. When attorney's fees are recoverable, Texas law requires the recovery to "be reasonable under the particular circumstances of the case and [for the recovery to] *bear some reasonable relationship to the amount in controversy*."[35] On this record, the trial court could not reasonably determine if

---

[35] *Wuagneux Builders, Inc. v. Candlewood Builders, Inc.*, 651 S.W.2d 919, 923 (Tex. App.—Fort Worth 1983, no writ) (emphasis in original).

the award was grossly disproportionate to the amount at stake on Toledo's defamation claims.

In her petition, Toledo did not specify the amount of damages she sought from KBMT. And KBMT did not file special exceptions to her petition. In the trial, McCabe testified that he considered the amount in controversy when preparing his opinion, but he never stated what that amount was. He also testified that KBMT took the matter seriously, but the firm's billing records reflect that McCabe's firm performed legal research on slander claims and on whether KBMT had a media privilege. That work took less than an hour. The invoices then show that McCabe had a conference with Toledo's counsel, also less than an hour, and the firm's efforts then shifted to getting Toledo's case dismissed based on KBMT's claim that its broadcasts were substantially true. We further note that KBMT's original answer alleges Toledo's suit is frivolous.

In the trial, McCabe testified and argued that the fees KBMT sought were reasonable because the case involved litigating a matter of first impression in the Texas Supreme Court over whether that Court possessed jurisdiction to consider KBMT's appeal. But when Toledo sued, the TCPA had been in effect for almost two years. Moreover, the defamation claim lies at the heart of the arguments KBMT presented to the trial court and throughout its appeals. That claim did not present the

15

courts with a matter of first impression. While the application of existing well-settled law to the facts of Toledo's case produced differences of opinion among the justices who reviewed KMBT's appeals, the outcome of Toledo's case proved to be controlled by well-established precedent.[36] Questions over how well-settled precedent applies to a given set of facts is a common problem leading to many appeals, but the existence of a difference in opinion about how the law applies to a given set of facts does not make the case one of first impression.

Under Texas law, a reasonable attorney's fee calculation results in an award that is "not excessive or extreme, but rather moderate or fair."[37] When Toledo was before the trial court, she identified many items in the firm's invoices that reflected duplicative, excessive, or inadequately documented work. Yet the trial court failed to reduce or eliminate any of them in its award.[38]

---

[36] *KBMT*, 492 S.W.3d at 714 (noting the legal test the court applied to the newscast at issue). In footnote eighteen of *KBMT*, the Texas Supreme Court cites various authorities for the test it applied to Toledo's case. *Id*. at n. 18 (the authorities cited include *Neely v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013), *Turner v. KTRK Television, Inc*., 38 S.W.3d 103, 115 (Tex. 2000), *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990), and *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991)). KBMT cited each of these cases in its motion to dismiss, which it filed in early-April 2013.

[37] *See Sullivan*, 488 S.W.3d at 299.

[38] *See El Apple I*, 370 S.W.3d at 762.

Generally, the issues involved in a trial narrow as a case is appealed. In this case, however, the invoices reflect little if any efficiencies expected in cases that involve appeals. Instead, KBMT was billed more, not less, at each stage of the proceedings. The increasing bills occurred despite a backdrop that reveals KBMT's attorneys identified the cases that controlled the outcome of Toledo's case within months of the date Toledo sued.[39]

We conclude the trial court failed to apply the lodestar method properly and that it abused its discretion by failing to apply the guiding rules and principles to determine the reasonableness of the amount it awarded to KBMT.[40] For the reasons explained above, we conclude the fees awarded KBMT are excessive and extreme. On this record, it was neither reasonable, nor just, to require Toledo to pay the entire amount of fees that are at issue in the appeal. Based on our conclusion the evidence is factually insufficient to support the trial court's award, we sustain the sole issue Toledo raised in her appeal.

Attorney's Fees for Appeal

In its cross-appeal, KBMT argues the trial court erred by failing to award reasonable attorney's fees to KBMT contingent on its prevailing in any of Toledo's

---

[39] *See KBMT*, 492 S.W.3d at 714 n.18.

[40] *See McGibney*, 549 S.W.3d at 826.

appeals. Given that we granted Toledo's request for a new trial, we conclude the cross-appeal issue is moot.[41]

Conclusion

We reverse the trial court's award of $256,689 to Defendants, KBMT Operating Company, LLC, KBMT License Company, LLC, Brian Burns, Jackie Simien and Tracy Kennick. We remand the case to the trial court based on our conclusion the parties are entitled to a new trial solely on the amount KBMT should recover for reasonable attorney's fees. The remainder of the trial court's judgment is affirmed.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on July 24, 2018
Opinion Delivered June 13, 2019

Before Kreger, Horton and Johnson, JJ.

---

[41] *See* Tex. R. App. P. 43.2(d) (authorizing the appellate court to reverse and remand a case following an appeal).